IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

BOARD OF DIRECTORS OF THE LINKS     :
CONDOMINIUM ASSOCIATION, INC.,     :
                              :
      Plaintiff,                  :
                              :
v.                                    :       Case No. 3:11-CV-00252
                              :
INVESTORS USA III, LLC,            :
                              :
      Defendant.               :

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR REMAND**</u>

I.     <u>**STATEMENT OF THE CASE AND MATERIAL FACTS**</u>

      **A. PLAINTIFF'S COMPLAINT**

      On September 26, 2005 the Declaration to the Links Condominium was recorded in the Clerk's Office of Henrico County, Virginia and the Links Condominium (the "Links" or "Condominium") was created. Currently the balconies, breezeways and several other structural components of the Links are in danger of catastrophic failure because of the improper design and construction of the balconies and other structural components at the Links. The structural defects in the design and construction of the Links that are responsible for the extremely dangerous and unsafe condition of the balconies, breezeways and other structural components of the Links was present on September 26, 2005, when the Declaration was recorded and the Condominium created.

      The aforementioned structural defects remain present in the balconies, breezeways and other structural components of the Links to this day. For this reason, after giving the Defendant, Investors USA III, LLC (the "Defendant" or "Investors LLC"),

the requisite statutory notice of their intent to file suit, the Plaintiff, the Board of Directors of the Links Condominium Association, Inc. (the "Plaintiff" or "Association"), filed its complaint asserting a claim for breach of warranty against structural defects pursuant to §55-79.79 of the Code of Virginia (the "Complaint). The Complaint was filed on December 20, 2010 in the Fourteenth Judicial Circuit in and for Henrico County, Virginia, Case No. CL10-3674. Complaint, p. 1. The Plaintiff served the Defendant with the Complaint on March 30, 2011 and the Defendant filed its notice to remove this case to the United States District Court for the Eastern District of Virginia on April 18, 2011 (the "Notice of Removal"). Notice of Removal, p. 1.

### B. DEFENDANT'S NOTICE OF REMOVAL

In the Notice of Removal Investors LLC alleges that this Court has original jurisdiction over the claims in the instant suit pursuant to 28 U.S.C. §1332, and the assertions that the amount in controversy of this suit is greater than $75,000 and all the parties to this litigation are completely diverse. *See* Notice of Removal. In regards to the amount in controversy, Investors LLC states that Plaintiff's "ad damnum set forth in the Complaint is $2,500,000.00". Notice of Removal, ¶ 5. Plaintiff does not contest this allegation by Defendant and submits that the amount in controversy in the instant suit is greater than the minimum threshold required for federal jurisdiction.

In regards to the complete diversity of the parties, Investors LLC asserts in its Notice of Removal:

1) The Plaintiff, the Board of Directors of the Links Condominium Association, Inc., is the executive organ of a Virginia Corporation located in Henrico County, Virginia.

2) The Defendant, Investors USA III, LLC, is a limited liability company organized under the laws of Delaware and whose members include:

a. Garden City Real Estate Group III, LLC, a limited liability company organized under the laws of New York that contains no members that are citizens of Virginia.

b. Asset Management Advisors III, LLC, a limited liability company organized under the laws of New York whose members include:

    i. Leonard Bayer, an individual and a citizen of New York,

    ii. Ivan Goodstein, an individual and a citizen of New York, and

    iii. GF Virginia II, LLC, a limited liability company organized under the laws of New York and whose members include:

        1. Steven Goodstein, an individual and a citizen of Florida,
        2. Ivan Goodstein, an individual and a citizen of New York,
        3. Andrew Goodstein, an individual and a citizen of Arizona,
        4. Marjorie Goodstein-Newman, an individual and a citizen of Florida, and
        5. Linda Goodstein, an individual and a citizen of Florida.

Notice of Removal, ¶ 4. At the time of the removal, the Association was unaware of any basis to legitimately object to the aforementioned representations of Investors LLC regarding the existence of complete diversity between the parties.

## C. ADDITIONAL MEMBER OF ASSET MANAGEMENT, LLC: THE STAATS FAMILY OF VIRGINIA, LLC

Curiously in Defendant's Notice of Removal there is no description of the citizenship of the Staats Family of Virginia, LLC ("Staats Family LLC"), an original fourth member of Asset Management Advisors III, LLC ("Asset Management LLC") and a Virginia limited liability company whose members include citizens of Virginia. *See* Exhibit 1; Exhibit 2, p. 1, ¶¶ 3 and 7(A); Exhibit 3, p. 8, lines 7-8, p.12, lines 5-16, p. 16, lines 6-23, p. 75, lines 4-8. According to the Operating Agreement of Asset Management LLC ("AMA Operating Agreement"), dated February 10, 2005 and endorsed by all members, there are four members of Asset Management LLC and they include: GF Virginia II, LLC, Leonard Bayer, Ivan Goodstein, and the Staats Family of

Virginia, LLC. Exhibit 1, pp.14 and 18. No document has yet been provided to the Association that can confirm the Staats Family LLC is no longer a member of Asset Management LLC and, in turn, no longer holds a membership interest in Investors LLC.[1] Moreover, substantial evidence exists that indicates that at the time the Complaint was filed the Staats Family LLC was in fact a member of Investors LLC. Said evidence is contained in the AMA Operating Agreement, the deposition testimony of Stephen J. Staats ("Mr. Staats" or "Stephen Staats"), manager of the Staats Family LLC, and can be inferred from actions taken by Mr. Staats to benefit Investors LLC while in his capacity as a member-manager of Staats Family LLC and Asset Management LLC.

### D. RELATIONSHIP BETWEEN STAATS FAMILY LLC, ASSET MANAGEMENT LLC AND INVESTORS LLC

According to the AMA Operating Agreement the Staats Family LLC holds a twenty-four and three-quarter percent (24.75%) ownership interest in Asset Management LLC. Exhibit 1, p. 19. Additionally, a review of the recorded deeds of sale for units at the Links revealed that between the years 2005 and 2010 several recorded deeds for units at the Links were executed on behalf of Investors LLC though "its

---

[1] When Mr. Staats was deposed on September 16, 2011, he claimed to possess documentation that could demonstrate that the Staats Family LLC's relinquished their membership in Asset Management LLC sometime in March of 2011. Exhibit 3, p.18, lines 4-25. In an attempt to verify Mr. Staats' claims of divesture, on September 19, 2011 the Association served on the Staats Family LLC, through its registered agent for service, Stephen J. Staats, an attorney-issued subpoena *duces tecum* that requested copies of these and other documents possessed by the entity. Exhibit 4. On September 23, 2011, Mr. Staats responded on the behalf of the Staats Family LLC and claimed to no longer possess any responsive documents to the Association's subpoena of September 19, 2011. Exhibit 5. Despite Mr. Staats' prior attestation under oath to possessing documents that could demonstrate the Staats Family LLC no longer possessed a membership interest in Asset Management LLC, pursuant to a federal subpoena, Mr. Staats could produce no documentation evidencing the relationship between these entities has ceased.

Manager," Asset Management LLC, and signed on behalf of Asset Management LLC by "its Manager," Stephen Staats.[2] Exhibit 6, pp. 3, 7, 11, 15, 19, 23. Furthermore, the Association has reason to believe that all of the deeds of conveyance for units at the Condominium to the initial purchasers were crafted in this fashion.

Moreover, Mr. Staats was deposed by the Association in this case at 10:00AM on September 16, 2011, and testified that the Staats Family LLC was a member of Asset Management LLC and held the aforementioned interest in Investors LLC and the Links until approximately March of 2011. Exhibit 3, p.18, lines 4-25, p. 71, lines 15-20, p. 72, lines 18-24. Furthermore, in regards to his position in Asset Management LLC and Investors LLC, Mr. Staats explained during his deposition that he was the "primary point person" in Virginia that represented Goodstein Development Corp., Investors LLC and Asset Management LLC during the acquisition, conversion from apartments to condominium, and subsequent sale of units at the Links, a period of time encompassing over five years. Exhibit 3, p. 78, lines 6-12.

---

[2] When Mr. Staats was deposed on September 16, 2011, he verified that he had signed a number of deeds on behalf of Investors LLC. Exhibit 3, p. 60, line 17 – p., 61, line 24, p. 62, lines 10-23, p. 63, line 2 – p. 65, line10. However, despite the representations made in these documents, and the notaries sworn affirmation that Mr. Staats was signing on behalf of Investors LLC in his capacity as "manager and duly authorized agent" of Asset Management LLC, Mr. Staats claimed in his deposition to have not been a manager of Asset Management LLC. Exhibit 6, pp. 3, 7, 11, 15, 19, 23; Exhibit 3, p. 61, line 12 – p. 62, line 9, p. 37, line 12 – p. 39, line 10. Rather, Mr. Staats claimed he was given a "temporary appointment" that granted him the limited authority to execute these documents on behalf of Investors LLC, despite his not being a manager of the entity. Exhibit 3, p. 37, line 12 – p. 39, line 10. Such documents evidencing this temporary appointment of power were not affixed to any deeds filed by Investors LLC. Moreover, the Association has yet to be provided by Investors LLC, Asset Management LLC, the Staats Family LLC or Mr. Staats with any documents or proof that can demonstrate such a temporary managerial appointment of Mr. Staats granting him the limited authority to enter into legal agreements on the behalf of Asset Management LLC ever existed.

### E. MEMBERS OF STAATS FAMILY LLC ARE CITIZENS OF VIRGINIA

The Staats Family LLC is a Virginia limited liability company with at least three, and likely more, members who are residents of Virginia. In regards to the members of the Staats Family LLC, Mr. Staats stated in his deposition testimony that his "ex-wife and five kids" are part of the entity. Exhibit 3, p.75, lines 4-8, 18-25. Moreover, in December of 2010, Mr. Staats changed the registered agent for service of the Staats Family LLC from Mark A. Fleckenstein, Esq., to himself. Exhibit 2. In the paperwork that Mr. Staats filed with the State Corporation Commission of the Commonwealth of Virginia, dated December 13, 2010 (the "SCC Paperwork"), Mr. Staats identifies himself as a "managing member" of the Staats Family LLC. Exhibit 2, p. 1, ¶ 7(A).

In regards to the citizenship of the members of the Staats Family LLC, Mr. Staats testified in his deposition that he has been a resident of Virginia since 2001 without interruption. Exhibit 3, p. 8, lines 2-8. Moreover, in the SCC Paperwork that Mr. Staats filed with the State Corporation Commission of Virginia, Mr. Staats attests that his address is 210 Dundee Avenue, Richmond, Virginia 23225. Exhibit 2, p. 1, ¶ 3. Furthermore, according to Mr. Staats, at least one of his children is a resident of Virginia and currently resides at the Condominium. Exhibit 3, p. 59, lines 2-9. Moreover, Mr. Staats ex-wife, Joanne Kearns, currently resides in Virginia and has owned property in Midlothian, Virginia, since 2008. Exhibit 7, pp. 3-4.

## II. REMAND - AUTHORITY AND ARGUMENT

### A. BURDEN TO ESTABLISH FEDERAL DIVERSITY JURISDICTION IS ON PARTY SEEKING REMOVAL

"The burden of establishing whether the statutory and jurisdictional requirements for removal [are met] is on the removing Defendants." CPFilms, Inc. v. Best Window

Tinting, Inc., 466 F. Supp. 2d 711, 712 (W.D. Va. 2006) (citing Mulcahey v. Columbia Organic Chems., 29 F.3d 148, 151 (4th Cir.1994)); *see also* Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *see also* Barbour v. Int'l Union, 640 F.3d 599, 605 (4th Cir. 2011); *see also* Lee v. Citimortgage, Inc., 739 F. Supp. 2d 940, 942 (E.D. Va. 2010).

Moreover, removal statutes must be construed narrowly. *See* Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *see also* Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *see also* Kline v. Burke Construction Co., 260 U.S. 226, 233, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226, 24 A.L.R. 1077 (1922).

Furthermore, it is well-established that federal courts are "'obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated' and that 'if federal jurisdiction is doubtful, a remand to state court is necessary.' " Palisades Collections LLC v. Shorts, 552 F.3d 327, 333–34 (4th Cir.2008) (quoting Md. Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255, 260 (4th Cir.2005)); *see* Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005); *see also* Custer v. Sweeney, 89 F.3d 1156, 1167 (4th Cir.1996) ("Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law ... absent some clearly expressed direction."); *see also* Mulcahey, 29 F.3d at 151.

## B. WHEN DOUBT EXISTS AS TO FEDERAL DIVERSITY JURISDICTION CASE SHOULD BE REMANDED

Where there is any doubt concerning the jurisdiction of the federal court on removal, the case should be remanded. Lee, 739 F. Supp. 2d at 942. The federal district court must remand to the state court any case that was removed improvidently or without necessary jurisdiction. See Creed v. Virginia, 596 F. Supp. 2d 930, 937 (E.D. Va. 2009). Accordingly, any doubt about the propriety of removal in a case should be resolved in favor of remanding the case to state court. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (citing Mulcahey, 29 F.3d at 151).

## C. STATUTORY AUTHORITY FOR FEDERAL DIVERSITY JURISDICTION

Federal Statute 28 U.S.C. §1332(a), entitled, "Diversity of citizenship; amount in controversy; costs," states in pertinent part:

> (a)  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between --
>
> > (1) citizens of different states;
> > (2) citizens of a state and citizens or subjects of a foreign state;

* * *

28 U.S.C. §1332.

In order to satisfy the statutory requirements for diversity jurisdiction the Defendant must show, "(i) that the amount in controversy exceeds $75,000, see § 1332(a), and (ii) 'complete' diversity between the parties." Lloyd v. Travelers Prop. Cas. Ins. Co., 699 F. Supp. 2d 812, 815 (E.D. Va. 2010); see Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806). Furthermore, "[i]t has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570, 124 S. Ct.

1920, 1924, 158 L. Ed. 2d 866 (2004) (citing Mollan v. Torrance, 9 Wheat. 537, 539, 6

L.Ed. 154 (1824)); see also Conolly v. Taylor, 2 Pet. 556, 565, 7 L.Ed. 518 (1829) ("...a

jurisdiction depending on the condition of the party is governed by that condition, as it

was at the commencement of the suit.").

## D. TIME OF FILING RULE

The Fourth Circuit has opined that, "[r]emoval statutes do not create jurisdiction.

They are instead a mechanism to enable federal courts to hear the cases that are

already within their jurisdiction." Lontz, 413 F.3d at 444; see Darcangelo v. Verizon

Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002).  In this regard, the

requirement that for the purposes of diversity all parties must be completely diverse at

the commencement of the action is a legal principle that has remained virtually

unchanged since 1824.  See Mollan, 9 Wheat. at 539; see Conolly, 2 Pet. at 565; see

Grupo Dataflux, 541 U.S. at 571; see Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S.

826, 830, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989)( "The existence of federal

jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.");

e.g. Smith v. Sperling, 354 U.S. 91, 93, n. 1, 77 S.Ct. 1112, 1113, n. 1, 1 L.Ed.2d 1205

(1957).

According to both the Federal Rules of Civil Procedure and the Rules of the

Virginia Supreme Court, a civil action is commenced by the filing of the complaint with

the court.  Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the

court."); Va. Sup. Ct. R. 3:2 ("A civil action shall be commenced by filing a complaint in

the clerk's office.").  Moreover, the United States Supreme Court has repeatedly held

that to sustain federal jurisdiction over a removed cause of action on the ground of

diverse citizenship, it must appear affirmatively from the petition for removal, or elsewhere in the record, that such diversity existed at the commencement of the suit, and not merely at the time of removal or subsequently. Gibson v. Bruce, 108 U.S. 561, 563, 2 S. Ct. 873, 874, 27 L. Ed. 825 (1883); Smith v. Akers, 117 U.S. 197, 6 S. Ct. 669, 29 L. Ed. 888 (1886); see Mattingly v. Nw. Virginia R. Co., 158 U.S. 53, 56, 15 S. Ct. 725, 726, 39 L. Ed. 894 (1895); see La Confiance Compagnie d'Assurance Contre L'Incendie v. Hall, 137 U.S. 61, 11 S. Ct. 5, 34 L. Ed. 573 (1890); see Kellam v. Keith, 144 U.S. 568, 12 S. Ct. 922, 36 L. Ed. 544 (1892); see Jackson v. Allen, 132 U.S. 27, 34, 10 S. Ct. 9, 9, 33 L. Ed. 249 (1889); see Stevens v. Nichols, 130 U.S. 230, 9 S. Ct. 518, 32 L. Ed. 914 (1889); see also Houston & T.C. Ry. Co. v. Shirley, 111 U.S. 358, 360-61, 4 S. Ct. 472, 473, 28 L. Ed. 455 (1884) ("a suit could not be removed on the ground of citizenship, unless the requisite citizenship existed both when the suit was begun and when the petition for removal was filed."); see also Wisconsin Dept. of Corr. v. Schacht, 524 U.S. 381, 390, 118 S. Ct. 2047, 2053, 141 L. Ed. 2d 364 (1998) ("…for purposes of removal jurisdiction, we are to look at the case as of the time it was filed in state court…"); see also Roecker v. United States, 379 F.2d 400, 407 (5th Cir. 1967) ("In order for a case to be removable on the ground of diversity, diversity must exist at the time the state action is commenced."); see also Cline v. Belt, 43 F. Supp. 538, 539 (E.D. Ky. 1942) ("[Diversity of citizenship] must exist not only at the time of filing the petition for removal, but at the commencement of the action."); see also 1A Moore, Federal Practice P0.161(1), at 528, P0.157(12), at 382.

The action is this case commenced upon the filing of the Complaint in the Fourteenth Judicial Circuit in and for Henrico County, Virginia. The Complaint was filed

10

in the Circuit Court on December 20, 2010.  Complaint, p. 1; Notice of Removal, ¶ 1 and

Exhibit 1.  Therefore, in order to evaluate whether this Court holds original jurisdiction

over the instant case pursuant to 28 U.S.C. §1332, making removal proper, the

citizenship of both parties as of December 20, 2010 must first be determined.

## E. CITIZENSHIP OF THE PLAINTIFF FOR PURPOSE OF DIVERSITY

### i. RULE

#### 1. CITIZENSHIP OF A CORPORATION IS DETERMINED BY STATE OF INCORPORATION AND PRINCIPAL PLACE OF BUSINESS

28 U.S.C. §1332(c), states in relevant part,

    (c)    For the purposes of this section and section 1441 of this title—

        (1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business

28 U.S.C §1332.

### ii. ANALYSIS

The fact is undisputed in this case that the Plaintiff is the executive organ of a

corporation incorporated in the state of Virginia with its principal place of business in

Henrico County, Virginia.  Complaint, ¶ 1; Notice of Removal, ¶ 3.  For the purposes of

diversity the Plaintiff is a citizen of Virginia.

## F. CITIZENSHIP OF THE DEFENDANT FOR PURPOSE OF DIVERSITY

### i. RULES

#### 1. CITIZENSHIP OF LLC IS DETERMINED BY CITIZENSHIP OF ALL MEMBERS

For the purposes of diversity jurisdiction, the law is well established that the

citizenship of a limited liability company ("LLC") is determined by the citizenship of all of

its members. *see* <u>Carden v. Arkoma Associates</u>, 494 U.S. 185, 187, 110 S. Ct. 1015, 1017, 108 L. Ed. 2d 157 (1990); <u>Cent. W. Virginia Energy Co., Inc. v. Mountain State Carbon, LLC</u>, 636 F.3d 101, 103 (4th Cir. 2011); <u>Gen. Tech. Applications, Inc. v. Exro Ltda</u>, 388 F.3d 114, 121 (4th Cir.2004); *see also* <u>Reid v. The Wailers</u>, 606 F. Supp. 2d 627, 629-30 (E.D. Va. 2009). Moreover, a United States District Court out of the Seventh Circuit has opined, "when partners or members are themselves entities or associations, the citizenship must be traced through however many layers of members or partners there may be, and failure to do can result in dismissal for want of jurisdiction." <u>Turner Bros. Crane & Rigging, LLC v. Kingboard Chem. Holding Ltd.</u>, CIV.A. 06-88-A, 2007 WL 2848154 (M.D. La. Sept. 24, 2007*); see also* <u>Bozman v. Shreveport Doctor's Hosp.</u>, 2006 WL 2524161 (W.D.La.) (citing <u>Meyerson v. Harrah's East Chicago Casino</u>, 299 F.3d 616 (7th Cir.2002) and <u>Hicklin Engineering, LLC v. Bartell</u>, 439 F.3d 346 (7th Cir.2006)).

### 2. CITIZENSHIP OF NATURAL PERSON IS DETERMINED BY STATE OF DOMICILE

"'To determine state citizenship [of a natural person for the purposes of diversity], courts look to the person's domicile.... A person's domicile, in turn, is the place where a person has a fixed and permanent home to which he intends to return whenever he is absent therefrom.'" <u>Redditt v. Fairfax County Police Dept.</u>, CIV. 02-1275-A, 2003 WL 24232724 (E.D. Va. Mar. 4, 2003) (quoting <u>Schieszler v. Ferrum College</u>, 236 F.Supp.2d 602, 612-13 (W.D.Va.2002) (citing <u>Axel Johnson, Inc. v. Carroll Carolina Oil Co.</u>, 145 F.3d 660, 663 (4th Cir.1998); *see also* <u>C.I .R. v. Swent</u>, 155 F.2d 513, 515 (4th Cir.1946); *see also* <u>Moulds v. Bank of New York Mellon</u>, 1:11-CV-200, 2011 WL 4344439 (E.D. Tenn. Sept. 14, 2011).

## ii. ANALYSIS

Investors LLC has two members, Asset Management LLC and Garden City Real Estate Group III, LLC ("Garden City LLC"). In accordance with the aforementioned cases, the citizenship of Investors LLC, for the purposes of diversity, is dictated by the citizenship of each of its members and, because all members of Investors LLC are limited liability companies themselves, the citizenship of each of its members' members. Moreover, two of the members of Asset Management LLC are natural persons, Ivan Goodstein and Leonard Bayer, and two are limited liability companies, the Staats Family LLC and GF Virginia II, LLC. Furthermore, all of the members of the Staats Family LLC and GF Virginia II, LLC, both members of Investors LLC pursuant to membership in Asset Management LLC, are natural persons. Therefore, in order to determine the citizenship, for the purposes of diversity, of the Defendant it is necessary to fully evaluate the citizenship of each of its members, and because all members of Investors LLC are limited liability companies themselves, the citizenship of each of its members' members, and because two of the members' members of Investors LLC are limited liability companies, GF Virginia II, LLC, and the Staats Family LLC, the citizenship of each of the members of these entities as well.

In regards to Garden City LLC, in the Notice of Removal the Defendant represents that no members of Garden City LLC are residents of Virginia. Notice of Removal, ¶ 4(a). The Association has received no evidence that brings into question any of the representations made by the Defendant regarding the citizenship of any of the members of Garden City LLC. Accordingly, the Plaintiff submits that for the

purposes of diversity, Garden City LLC is a citizen of New York, New Jersey, Florida, Arizona, and California. Notice of Removal, Exhibit 3.

In regards to Asset Management LLC, at the time the Complaint was filed the members of this entity included: Ivan Goodstein, Leonard Bayer, GF Virginia II, LLC, and the Staats Family LLC. Exhibit 1; Exhibit 3, p. 16, lines 6-23, p. 17, lines 19-24. The Association submits that they have received no indication that any of the representations made by the Defendant regarding the citizenship of Ivan Goodstein, Leonard Bayer or GF Virginia II, LLC are untrue. The Association therefore submits that for the purposes of diversity Ivan Goodstein is a resident of New York, Leonard Bayer a resident of New York, and GF Virginia II, LLC, a resident of New York, Arizona and Florida. Notice of Removal, ¶¶ 4(b)(i), 4(b)(ii), and 4(b)(iii).

In regards to the Staats Family LLC, as previously noted *infra.*, the members of the Staats Family LLC are Mr. Staats, his ex-wife, Joanne Kearns, and his five kids. Exhibit 2; Exhibit 3, p.75, lines 4-8, 18-25. In regards to Mr. Staats citizenship, during his deposition Mr. Staats testified that he has been a continuous and uninterrupted resident of Virginia since approximately 2001. Exhibit 3, p. 8, lines 2-8. Moreover, as of August 31, 2011, the last mailing address on file with the United States Postal Service for Stephen J. Staats was 210 Dundee Avenue, Richmond, Virginia 23225. Exhibit 8. Furthermore, Mr. Staats was twice served with subpoenas at this address in the instant case and twice accepted process, first on September 1, 2011 and again on September 19, 2011. Exhibit 9; Exhibit 4. Additionally, Mr. Staats testified in his deposition that currently he is looking for development and construction management positions in Virginia and it is his present intent "to do that in Virginia and remain in Virginia." Exhibit

3, p. 20, lines 13-21. The aforementioned facts strongly support the conclusion that Mr. Staats' "fixed and permanent home to which he intends to return whenever he is absent therefrom," is 210 Dundee Avenue, Richmond, Virginia. Accordingly, because Mr. Staats' domicile is in the state of Virginia, he is therefore a citizen of Virginia for the purposes of diversity.

Some or all of the other members of the Staats Family LLC are additionally citizens of Virginia for the purpose of diversity. A search of Virginia land records confirmed that Mr. Staats' ex-wife, Joanne Kearns, has owned property in Midlothian, Virginia since 2008. Exhibit 7. Moreover, Mr. Staats stated during his deposition that one of his sons currently resides at the Condominium, which is in Henrico County, Virginia. Exhibit 3, p. 59, lines 2-9.

At the time the Complaint was filed, at least three and possibly all, members of the Staats Family LLC were residents of Virginia. Moreover, at the very least, Mr. Staats, the member-manager of the Staats Family LLC, is considered a citizen of Virginia for the purposes of diversity because substantial evidence indicates that Mr. Staats was domiciled in Virginia at the time the Complaint was filed. Consequently, in accordance with the slew of cases cited *infra.*, the Staats Family LLC is a citizen of Virginia for the purposes of diversity in this case.

As previously explained, at the time the Complaint was filed, the Staats Family LLC was a member of Asset Management LLC and, in turn, a member of Investors LLC. As a result, at the time the Complaint was filed Investors LLC was a citizen of, for the purposes of diversity, New York, New Jersey, Florida, Arizona, California and Virginia.

As previously noted, for the purposes of diversity, at the time the Complaint was filed the Association was, and remains to this day, a citizen of Virginia.

## G. REMAND IS NECESSARY BECAUSE PARTIES ARE NOT COMPLETELY DIVERSE

Both parties in this action are citizens of Virginia. 28 U.S.C. §1447(c) entitled, "Procedure After Removal Generally," provides in pertinent part:

> A motion to remand a case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). *If at any time before final judgment it appears that the district court lacks subject matter jurisdiction of the jurisdiction, the case shall be remanded*. An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as the result of the removal... (*emphasis added*).

28 U.S.C. §1447.

As previously explained *infra.*, the parties in this case are not completely diverse and as such this Court does not possess original jurisdiction over the claims presented in the Complaint. The only basis for this Court to exercise proper subject matter jurisdiction over this action is pursuant to 28 U.S.C. § 1332, which confers original jurisdiction on federal courts for claims in excess of $75,000 that arise between parties of completely diverse citizenship. The Defendant cannot show that the parties in this case were completely diverse at the time the Complaint was originally filed and as such, this Court does not possess original jurisdiction over the claims set forth in the Complaint pursuant to 28 U.S.C. § 1332. Without original jurisdiction this Court lacks the requisite subject matter jurisdiction to decide this case on its merits. In accordance with 28 U.S.C. §1447, this action should therefore be remanded back to the Fourteenth Judicial Circuit in and for Henrico County, Virginia.

## III.  ENTITLEMENT TO ATTORNEYS' FEES AND COSTS

The Plaintiff incurred significant attorneys' fees and costs in conjunction with the Defendant's Removal of this case to this Court and in the preparation of this Motion for Remand.  Authority exists for this Court to order Investors LLC pay the costs and fees expended thus far by the Association in contesting the improper removal of this action from state court.

### A. AUTHORITY

28 U.S.C. §1447(c), as amended, provides in relevant part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The award of costs and fees pursuant to §1447(c) is at the Court's discretion and the Unites States Supreme Court has articulated the standard to be used by the Court in determining whether this award is warranted as,

> [a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the *removing party lacked an objectively reasonable basis for seeking removal*. Conversely, when an objectively reasonable basis exists, fees should be denied. (*emphasis added.*)

Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S. Ct. 704, 711, 163 L. Ed. 2d 547 (2005); *see, e.g.,* Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 541 (5th Cir. 2004); Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 293 (C.A.5 2000).

The Supreme Court in Martin explained, "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." Martin, 546 U.S. at

140; *see also* <u>Williamsburg Plantation, Inc. v. Bluegreen Corp.</u>, CIV.A. 4:06CV102, 2007 WL 445289 (E.D. Va. Feb. 5, 2007). In part for these reasons the Court has additionally opined that when a party acts in bad faith in removing a case from state court, the Court should award costs and fees pursuant to §1447(c). *See* <u>In re Lowe</u>, 102 F.3d 731, 733 (4th Cir. 1996); *see also* <u>Tincher v. Ins. Co. of State of Pennsylvania</u>, 268 F. Supp. 2d 666, 668 (E.D. Va. 2003).

The conduct displayed by Investors LLC in this case is so egregious that both bad faith in removing the case and the lack of any objectionably reasonable basis for removal, can be shown. For these reasons, and for those explained herein, the Court should order Investors LLC pay the Association's fees and costs associated with contesting the improper removal of this case pursuant to §1447(c).

## B. ARGUMENT

The legal principles that all parties must be completely diverse at the filing of suit in state court in order to be eligible for removal and that a limited liability company assumes the citizenship of all members, for the purposes of diversity, are long-standing and well-settled points of federal jurisdictional jurisprudence that are beyond reproach and to which no party could possess any reasonable basis to contest. Moreover, Investors LLC's failure to disclose the existence of the Staats Family LLC and its membership in Investors LLC, as well as the curious timing and manner in which the Staats Family LLC allegedly divested itself of membership in Investors LLC, are prime examples of the questionable conduct demonstrated by Defendant throughout the course of this litigation and evidence of bad faith on the part of Investors LLC in regards to the removal of this action.

The existence of a fourth member of Asset Management LLC that was a citizen of Virginia at the time the Complaint was filed is clearly relevant to the jurisdiction of this case. Moreover, the extent of the involvement of Mr. Staats and the Staats Family LLC with Investors LLC and the Links are clearly relevant to the merits of the instant litigation. Accordingly, the existence of Mr. Staats and the Staats Family LLC should have been disclosed to the Association pursuant to F.R.C.P. 26(a)(1), the federal rule governing the timing and substance of information that is to be initially disclosed between the parties in good faith during the initial stages of a litigation. However, these, and other, relevant facts were only just recently discovered by the Association as a result of two events:

(1) the deposition of Mr. Staats, a witness whose existence was not, but should have, been properly disclosed to the Association by Investors LLC pursuant to F.R.C.P 26(a)(1), and

(2) Asset Management LLC's suspiciously untimely response to the Association's attorney-issued subpoena *duces tecum* that resulted in providing the Association with the AMA Operating Agreement.

The Association asserts that the timing of these two events is not coincidental. Moreover, these two events demonstrate, along with the wholly inadequate disclosures and discovery responses provided by Investors LLC, compelling evidence of bad faith and the lack of an objectively reasonable basis for seeking removal on the part of the Defendant.

### i. VAGUE, INCOMPLETE AND MISLEADING DISCLOSURES BY DEFENDANT

On June 15, 2011, Investors LLC provided their Rule 26(a)(1) Disclosures ("Defendant's Disclosures") to the Association in the instant case. Exhibit 10. Two days later, on June 17, 2011, the Association served on Investors LLC Plaintiff's Rule 26(a)(1) Initial Disclosures ("Plaintiff's Disclosures"). Exhibit 11. In Plaintiff's Disclosures, the Association freely and in good faith disclosed the name and contact information of all witnesses known to the Plaintiff to likely have discoverable information; Investors LLC failed to disclose in Defendant's Disclosures the identity of Stephen Staats as a party likely to have discoverable information and failed to make mention of the ownership interest the Staats Family LLC held in Investors LLC through its membership interest in Asset Management LLC.

Defendant will likely argue that the existence of Mr. Staats was sufficiently disclosed through Investors LLC's statement in Defendant's Disclosures that the "Association's Board of Directors, past and present" are witnesses likely to have discoverable information. Exhibit 10, p.1. However, while Mr. Staats' did serve on the Board of Directors of the Condominium at one point in time, so did Ivan Goodstein and Leonard Bayer; the identities of Leonard Bayer and Ivan Goodstein, in their capacity as individuals, were specifically disclosed by the Defendant, so why not Stephen Staats as well? It is surprising that given the substantial involvement that Mr. Staats has demonstrated he had with the acquisition, inspection, conversion and sale of units at the Links that Investors LLC would neglect to specifically identify Mr. Staats in the same fashion as they had other key players from Asset Management LLC.

### ii. EVASIVE, DELAYED AND DEFICIENT DISCOVERY RESPONSES BY DEFENDANT

On July 5, 2011 the Association served on Investors LLC Plaintiff's First Set of Interrogatories ("Plaintiff's First Interrogatories") and Request for Production of Documents ("Plaintiff's First RFP") in the instant case (Plaintiff's First Interrogatories and Plaintiff's First RFP are referred to collectively as "Plaintiff's First Discovery Requests"). Plaintiff's First Interrogatories No. 17, in relevant part, requested that Defendant:

> Identify all current and former members of Investors USA III, LLC, Garden City Real Estate Group III, LLC, Asset Management Advisors III, LLC…[and i]nclude in your identification of current members the exact date when membership began and include in your identification of former members the exact date when membership began and ceased.

Exhibit 12, p. 13, ¶ 17.

Plaintiff's First RFP No. 19, in relevant part, requested from Defendant:

> True and accurate membership lists, and any related materials… of all current and former members of Investors USA III, LLC, Garden City Real Estate Group III, LLC, Asset Management Advisors III, LLC... [and i]nclude in your listing of current members the exact date when membership began and include in your listing of former members exact start dates when membership began and precise ending dates for when membership in that entity or organization ceased.

Exhibit 12, p. 18, ¶ 19.

On July 26, 2011 Investors LLC responded to Plaintiff's First Discovery Requests but neglected to provide to the Plaintiff any documents in response to Plaintiff's First RFP. In response to Plaintiff's First Interrogatories No. 17, Investors LLC states:

> The members of Investors USA III are identified in Petition for Removal. Objection to the remainder of the interrogatory as unduly burdensome and not calculated to lead to the discovery of admissible evidence.

Exhibit 13, p. 7, ¶ 17.

In response to Plaintiff's First RFP No. 19, Investors LLC states:

> *Membership of Investors USA III, LLC and of its members is set forth in Petition for Removal. Objection as to other entities as unduly burdensome and not calculated to lead to the discovery of admissible evidence.*

Exhibit 13, p. 12, ¶ 19.

Defendant's complete response to Plaintiff's First Discovery Requests was due on August 1, 2011; however no responsive documents were produced by the Defendant to the Plaintiff in this case until over a month after this date. Exhibit 14. The Association was twice forced to demand, first through letter on August 24, 2011 and again on August 30, 2011 through email, that Defendant produce the documents promised in their July 26, 2011 response to Plaintiff's First Discovery Requests. Exhibit 16; Exhibit 17.

Finally, on September 2, 2011, Investors LLC served on the Association its Supplemental Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents ("Defendant's Supplemental Discovery Response"). Exhibit 14. In regards to Plaintiff's RFP No. 19, Defendant states in its Supplemental Response,

> *See documents marked as INV00246 – INV00261. Objection as to the other entities as unduly burdensome and not calculated to lead to the discovery of admissible evidence.*

Exhibit 14, p. 13, Supplemental Response to ¶ 19.

None of the documents eventually produced by Investors LLC on this date and referred to in Defendant's Supplemental Discovery Response reference or even acknowledge the existence of any membership interests of the Staats Family LLC in Asset Management LLC or Investors LLC.

### iii. DELAY IN SUBPOENA *DUCES TECUM* RESPONSE COINCIDES WITH UPCOMING DEPOSITION OF STEPHEN J. STAATS

On September 1, 2011, the Association served on Mr. Staats a subpoena to appear at 10:00AM on September 16, 2011 and testify at a deposition in the instant case. Exhibit 9. Additionally, on September 1, 2011, the Association served on Investors LLC its Notice of Deposition of Stephen Staats. Exhibit 17. Additionally, on September 1, 2011 the Association served on Asset Management LLC, through its registered agent for service, Mark A. Fleckenstein, Esq. ("Mr. Fleckenstein"), a subpoena *duces tecum* to produce documents related to the Links and the members of Investors LLC (the "Subpoena"). Exhibit 18. Any and all responsive materials requested through the Subpoena were due to be produced to the law offices of the Association's counsel on or before 9:00AM of September 14, 2011 so that they could be reviewed prior to Mr. Staats deposition on September 16, 2011 at 10:00 AM.

By 4:00 PM of September 14, 2011 no responsive materials had yet been delivered to the Association's counsel; therefore the registered agent for service of process for Asset Management LLC, Mr. Fleckenstein, was contacted and asked where the responsive documents were. Mr. Fleckenstein informed the Association that Mr. Robert Dybing, Esq. ("Mr. Dybing"), Investors LLC's legal counsel in the instant case, should be contacted in regards to Asset Management LLC's response to the Subpoena because he was handling "that matter". As a result, Mr. Dybing was contacted and, while Mr. Dybing could provide no explanation for the delay in providing the responsive materials, he did represent that Leonard Bayer, a member-manager of Asset Management LLC and Investors LLC, would be back in New York on the morning of Friday, September 16, 2011 and would provide the responsive materials then. Exhibit 19.

On Friday, September 16, 2011 at 10:00 AM, the deposition of Mr. Staats commenced. Exhibit 3, p. 1. At 10:11 AM that same morning the first of a series of twenty-two (22) E-mails, containing attachments of documents, was sent by Leonard Bayer to the Association's legal counsel in response to the Subpoena. Exhibit 20. At approximately 11:57 AM that morning the deposition of Mr. Staats ended. Exhibit 3, p. 80. Over an hour later, at approximately 1:21 PM that afternoon, the AMA Operating Agreement was finally provided to the Association as an attachment to the eighteenth email sent by Lenny Bayer that day. Exhibit. 20, p. 19, Subject: AMA III #17.

Schedule A of the AMA Operating Agreement that was sent that day lists the four members of Asset Management LLC and their corresponding percentage interests in the entity. Exhibit 1, p. 18, Schedule A. Staats Family LLC is identified as having a 24.75% interest in the entity. Exhibit 1, p. 18, Schedule A. The AMA Operating Agreement is endorsed by the four members of Asset Management LLC as of inception: Ivan Goodstein, Leonard Bayer, Steven Goodstein, as manager of GF Virginia II, LLC, and Stephen Staats, as manager of the Staats Family of Virginia, LLC. Exhibit 1, p. 14. During the deposition of Stephen Staats was the first time the Association ever learned that there was a fourth member of Asset Management LLC and that an agreement evidencing this fact may potentially exist. All of this information could have been gleaned from a proper response by Investors to the Association's discovery requests. Moreover, it is wholly implausible that Leonard Bayer, of Asset Management LLC and Investors LLC, was not aware of this from the inception of this litigation.

The Association had previously requested that all documents responsive to the Subpoena be produced two days prior to Mr. Staats deposition in order to allow

sufficient time to review any documents received and prepare for the questioning of Mr. Staats about any relevant documents; instead responsive documents were provided by Asset Management LLC during and after Mr. Staats' deposition. Exhibit 18; Exhibit 20. Given the highly relevant nature of the AMA Operating Agreement to this litigation, had the Association been provided with this document prior to Mr. Staats' deposition, the Plaintiff most assuredly would have had several questions for Mr. Staats about the document. Investors LLC's untimely production of this document alone is curious, however when combined with the information divulged by Mr. Staats during his deposition, it amounts to evidence of a plot by the Defendant to deceive the Court and create the appearance of complete diversity among the parties in order to engage in jurisdictional forum-shopping.

### iv. EVIDENCE OF ATTEMPT TO FORMUM-SHOP BY DEFENDANT

Mr. Staats testified during his deposition that he understood the members of Asset Management LLC to be Steven Goodstein, Ivan Goodstein, Lenny Bayer and himself. Exhibit 3, p. 17, lines 19-24. However, he additionally explained that he no longer considers himself or the Staats Family LLC to be a part of Investors LLC or Asset Management LLC. Exhibit 3, p. 17, line 25 – p.18, line 2. Mr. Staats related that in approximately March of 2011 he was asked to resign from Asset Management LLC and, correspondingly Investors LLC, by Steven Goodstein, the manager of GF Virginia II, LLC, the member entity of Asset Management LLC responsible for the majority of the capital contributions to the Links project. Exhibit 3, p. 18, lines 3-17; *see* Exhibit 1, p. 18, Schedule A. In this regard, Mr. Staats stated that Steven Goodstein told him that, "it would be better suited if I resigned and I wasn't part of the Investors and whatever, that

asset company." Exhibit 3, p. 19, lines 19-21. Moreover, Mr. Staats indicated in his deposition that one of the reasons Steven Goodstein wished him to resign from Investors LLC was related to the instant case. Exhibit 3, p. 18, lines 16-22. Furthermore, as previously mentioned *infra.*, Mr. Staats expressed during his deposition that his role with the Links, Asset Management LLC and Investors LLC was as "the point person" in Virginia. Exhibit 3, p. 78, lines 6-17.

As a result of Steven Goodsteins' request to resign, Mr. Staats stated that he did in fact resign "from Investors and the entities involved with Investors" in approximately March of 2011. Exhibit 3, p. 18, lines 4-22. Moreover, Mr. Staats testified that as a result of Steven Goodstein's request Mr. Staats, in his capacity as manager of the Staats Family LLC, relinquished the twenty-four and a half percent (24.5%) interest that the Staats Family LLC held in the Links. Exhibit 3, p. 71, lines 1-20. According to Mr. Staats, the monetary value of the Staats Family LLC's relinquished ownership interest in the Links was approximately $2,400,000. Exhibit 3, p. 73, line 22 – p. 74, line 3. In exchange for the $2,400,000 interest in Investors LLC, Mr. Staats testified that the Staats Family LLC received neither monetary compensation nor any other interest, financial or otherwise, in any current or future investments of Asset Management LLC, Investors LLC or Goodstein Development Corp. Exhibit 3, p. 71, line 8 – p. 72, line 6, p. 76, lines 14-24. Mr. Staats additionally testified that he relinquished the Staats Family LLC's twenty-four and a half percent (24.5 %) interest in the Links solely because, "Mr. [Steven] Goodstein's statement to me, Staats, I will never hurt you." Exhibit 3, p. 77, lines 2-3.

The substance of most of Mr. Staats claims came as a surprise to the Association because few, if any, of the interactions Mr. Staats referenced had been disclosed previously and no document evidencing a membership interest held by the Staats Family LLC in Asset Management LLC had yet been provided to the Association by any party.

## VII. CONCLUSION

In summary, the Defendant is a limited liability company that is made up of two members, Asset Management LLC and Garden City Real Estate Group III, LLC. The Association possesses a signed agreement, the AMA Operating Agreement, which grants specific membership interests in Asset Management LLC to four parties: Leonard Bayer, Ivan Goodstein, GF Virginia II, LLC, and Staats Family of Virginia LLC.

Stephen Staats, the manager of the Staats Family LLC, admits that the Staats Family LLC was a member of Asset Management LLC, but claims that he relinquished the twenty-four and a half percent (24.5%) interest that the Staats Family LLC held in Asset Management LLC in approximately March of 2011. However, Mr. Staats can produce no documentation to evidence any transfer of ownership in Asset Management LLC. Moreover, Mr. Staats has asserted that he, on behalf of the Staats Family LLC, relinquished the interest held in Asset Management LLC, an interest that he estimated to be worth approximately $2,400,000, in return for no financial consideration and solely because he was asked to by Steven Goodstein, a fellow member-manager of Investors LLC, as a result of the instant lawsuit.

The Association requested through interrogatories, requests for production of documents, and attorney-issued subpoena *duces tecum* to be provided with any

documentation that reflected who the past and present members of Investors LLC and Asset Management LLC are. Currently, neither the Defendant nor any other party has produced to the Association any sort of documentation that officially divests the Staats Family LLC of any percentage of the twenty-four and three-quarters percent (24.75%) membership interest that is granted to the Staats Family LLC in the AMA Operating Agreement. The discovery phase in this litigation ended on September 27, 2011. The Association can therefore only conclude that no such document exists.

Substantial evidence has been presented in this Memorandum that demonstrates that several members of the Staats Family LLC were citizens of Virginia at the time the Complaint was filed in December of 2010. In accordance with the well-settled rule that limited liability companies assume the citizenship of all of its members for the purposes of diversity, the Staats Family LLC is therefore a citizen of Virginia for the purposes of diversity in this case. Moreover, the fact is undisputed in this case that the Association is a citizen of Virginia for the purposes of diversity.

The burden of establishing federal jurisdiction rests upon the Defendant, who is the party seeking removal in this case. In this respect, Investors LLC has failed to meet its burden in proving that this Court has original jurisdiction over the claims set forth in the Complaint pursuant to 28 U.S.C. §1332. Accordingly, because this Court lacks subject matter jurisdiction over the claims presented in the Complaint, removal of this case to this Court is therefore improper. Pursuant to 28 U.S.C §1447, this case should be remanded back to the court that originally held jurisdiction. In this regard, the Plaintiff respectfully requests this court remand this action back to the Fourteenth Judicial Circuit in and for Henrico County, Virginia. Moreover, the Plaintiff additionally

requests that the Court award to the Association its fees and costs incurred as a result of the improper removal of this matter pursuant to 28 U.S.C §1447(c).

Respectfully Submitted,

BOARD OF DIRECTORS OF THE LINKS
CONDOMINIUM ASSOCIATION, INC.

_____ /s/

Wilbert Washington II, VSB# 33700
Andrew G. Elmore, VSB# 33822
Michael A. Sottolano, VSB# 81216
CHADWICK, WASHINGTON, MORIARTY,
    ELMORE & BUNN, P.C.
201 Concourse Blvd., Suite 101
Glen Allen, Virginia 23059
Phone: (804) 346-5400
Fax: (804) 965-9919
wwashington@chadwickwashington.com
agelmore@chadwickwashington.com
msottolano@chadwickwashington.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 3, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Robert A. Dybing, Esq., William D. Prince, IV, Esq., ThompsonMcMullan, P.C., 100 Shockoe Slip, 3rd Floor, Richmond, Virginia 23219, Phone: (804) 698-6248, Fax: (804) 780-1813, rdybing@t-mlaw.com, wprince@t-mlaw.com

/s/
_____
Wilbert Washington II, VSB# 33700
Andrew G. Elmore, VSB# 33822
Michael A. Sottolano, VSB# 81216
CHADWICK, WASHINGTON, MORIARTY,
    ELMORE & BUNN, P.C.
201 Concourse Blvd., Suite 101
Glen Allen, Virginia 23059
Phone: (804) 346-5400
Fax: (804) 965-9919
wwashington@chadwickwashington.com
agelmore@chadwickwashington.com
msottolano@chadwickwashington.com